**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case Number **07-61084**

*CIV-ZLOCH*

NEIL RAMSAY,

    Plaintiff,

vs.

MARITIME PROTECTIVE SERVICES, INC.,
and JOHN BENNETT, individually,

    Defendants.

_____/

MAGISTRATE JUDGE
SNOW

FILED by ___ D.C.
INTAKE

AUG -2 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, NEIL RAMSAY ("RAMSAY"), by and through his undersigned attorneys, and hereby sues the Defendant, MARITIME PROTECTIVE SERVICES, INC., and JOHN BENNETT, individually, and for his cause of action, states as follows:

### INTRODUCTION

1.    This is an action to remedy unlawful racial, ethnic and ancestral discrimination against NEIL RAMSAY because of his African ethnicity and ancestry and his membership in the Negroid race. Accordingly, RAMSAY seek injunctive relief and monetary damages to remedy discrimination on the basis of race, ethnicity and ancestry, and retaliation based on his having complained of racial discrimination, and to redress the deprivation of rights secured to him by the Civil Rights Act of 1871, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991) ("Section 1981").

### JURISDICTION AND VENUE

2.    The Court's jurisdiction conferred by 28 U.S.C. §§ 1331 and 1343(a)(4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any act of Congress providing for the protection of civil rights, such

as 42 U.S.C. § 1981.

      3.    The unlawful employment practices alleged below occurred and/or were committed within Broward County, Florida, within this judicial district, such that venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b). In addition, Defendant MPS at all times material hereto has been a Florida corporations licensed to and doing business within this judicial district, within the meaning of 28 U.S.C. § 1391(c).

**PARTIES**

      4.    At all times material hereto, NEIL RAMSAY ("Plaintiff" or "RAMSAY") was and continues to be a person of African ethnicity and ancestry, having the ethnic characteristics of that ancestry including being a member of the Negroid race. Plaintiff is over the age of 18 years and is otherwise *sui juris*.

      5.    At all time material hereto, RAMSAY was and continues to be a resident of Palm Beach County, Florida, within this judicial district.

      6.    At all times material hereto, RAMSAY was and continues to be a member of a protected class within the meaning of 42 U.S.C. § 1981.

      7.    At all times material hereto, Defendant MARITIME PROTECTIVE SERVICES ("MPS"), was and continues to be a corporation organized and existing under the laws of the State of Florida.

      8.    At all times material hereto, Defendant JOHN BENNETT ("BENNETT"), was and continues to be the Chief Executive Officer and owner of Defendant MPS. BENNETT is a white Caucasian male, over the age of 18 years, and otherwise *sui juris*.

      9.    At all times material hereto, Defendants owned and/or operated the MPS corporate offices where RAMSAY was employed, located in Deerfield Beach, Broward County,

2

Florida.   Further, at all times material hereto, Defendant BENNETT was an agent of Defendant MPS, such that the actions of BENNETT were the actions of MPS.

     **10.**    Defendants' unlawful employment practices set forth herein occurred within Broward County, Florida, within this judicial district.

**STATEMENT OF FACTS**

    11.    Plaintiff was employed by defendants from on or about April 12, 2004, until his termination on or about June 18, 2007.  During his employment, Plaintiff held several job titles and functions with MPS, including Human Resources Manager, Controller and Treasurer.

    12.    On or about February 20, 2007, Plaintiff received an email from MPS' Vice President, Bob Sewak, which was also addressed to "MPS Staff – All," as well as a number of other individuals who were either customers or vendors of MPS.  The three page email was a racist diatribe forwarded by Mr. Sewak, to which he had added the words "Found this and thought it was worth sending on . . ."   A copy of the email is attached hereto as Exhibit A.

    13.    The body of the email sent by Mr. Sewak described how the author was "Proud to Be White," before launching into a tirade of racist epithets directed towards numerous minority groups and nationalities, including blacks.  Among other things, the email stated that "you call me 'white boy,' 'cracker,' 'honkey,' 'whitey,' 'caveman' and that's okay.  But when I call you Nigger, Kike, Towel head, Sand-nigger, Camel Jockey, Beaner, Gook or Chink  . . . You call me racist."  The email also stated that "you say that whites commit a lot of violence against you, so why are the ghettos the most dangerous place to live?" and that "you rob us, carjack us, and shoot at us.  But, when a white police officer shoots a black gang member or beats up a black drug-dealer running from the law and posing a threat to society You call him a racist."  The email ended by stating that "I am proud.  But, you call me a racist.  Why is it that only whites

3

can be racists?  There is nothing improper about this email."

14.    Plaintiff was understandably shocked at having received such a racist email from MPS' Vice President, and immediately met with MPS' Chief Operating Officer, George Playton, to discuss what actions the company should take in response to the dissemination of the racist email by Mr. Sewak.    Although Plaintiff recommended that remedial action be taken immediately, Mr. Playton advised Plaintiff not to do anything, and that he would handle the matter.

15.    When Plaintiff received no further information from Mr. Playton about the matter, he prepared a written grievance regarding the incident, which he submitted to MPS' CEO, John Bennett.    The grievance was dated February 21, 2007, and copies were provided to Mr. Bennett, as well as MPS' payroll service, Paychex Business Solutions, which also performed certain Human Resources functions for MPS.

16.    Within a few days of submitting his grievance to Mr. Bennett, Plaintiff was admitted to the emergency room and ended up having surgery, which kept him out of work for several weeks, until approximately mid-March 2007.

17.    While Plaintiff was recovering from surgery, he received a call from John Bennett, who wanted Plaintiff's advice on how the company should respond to the actions of Mr. Sewak.    Mr. Bennett further informed Plaintiff that Mr. Sewak had written an apology that was to be issued to all of MPS' employees via email, and he forwarded a draft copy of the email for Plaintiff's review and comment.    Plaintiff advised Mr. Bennett to release the email as soon as possible, and upon information and belief, it was distributed to MPS' employees while Plaintiff was recovering from his surgery.

18.    Upon his return to the office from surgery, Plaintiff contacted Paychex to further

discuss his grievance and what, if any, action would be taken by MPS in response to the racist email sent by Mr. Sewak. The representative to whom Plaintiff spoke about the incident assured Plaintiff that the issues would be reported to Paychex Human Resources department for further action. Upon information and belief, Paychex also reported the incident and Plaintiff's complaint to MPS.

19.     After discussing his grievance with a representative of Paychecx, Plaintiff had a closed door meeting with John Bennett to discuss the issues raised in his written complaint dated February 21, 2007. During the meeting, Ramsay expressed that he was uncomfortable with the position he was placed in by the dissemination of the racist email, since he was both the company's Human Resources manager and a victim of the racist email from Mr. Sewak. He further advised Mr. Bennett that, in accordance with the company's written anti-discrimination policy, such conduct should not be tolerated and prompt disciplinary action should be taken against Mr. Sewak. In response, Mr. Bennett stated that he was conducting his own investigation into the incident.

20.     During the meeting, John Bennett also told Plaintiff that he did not think Mr. Sewak's actions in sending the email were intentional or malicious. Plaintiff, however, pointed out that Mr. Sewak had personally selected the recipients of the email, and that in addition to sending the email to the company's entire staff, he had also forwarded it to several of MPS' minority customers. Given the individually-selected recipients of the email, Plaintiff felt that Mr. Sewak's conduct was intentional and specifically directed at minority employees, customers and vendors.

21.     Although Plaintiff did not participate in Mr. Bennett's alleged investigation into the incident, he was eventually informed by Mr. Bennett that Mr. Sewak had been

"reprimanded" for his conduct in sending the racist email.   Although Plaintiff performed the Human Resources function at MPS, he was never provided with a copy of the alleged reprimand.

22.   In or about late May, 2007, Plaintiff learned from John Bennett that MPS was working with a company called Springboard Consulting, which was engaged to review and analyze certain aspects of MPS' operation and workforce, in order to increase the company's profitability.  On several occasions in late May and early June, Plaintiff met with representatives of Springboard Consulting to discuss his various job functions, duties and responsibilities. During the course of these discussions, Plaintiff mentioned that he felt MPS' company culture could improve, and he mentioned Bob Sewak's racist email as an incident that was damaging to MPS' company culture.  When he provided a copy of the racist email to Robert Alley, one of the Springboard Consulting representatives, Mr. Alley said he could not believe what he saw, and he were even more shocked when Plaintiff explained that, to his knowledge, there had been no remedial measures or disciplinary action taken by MPS in response to the email.

23.   Within a few weeks of his conversation with the representative of Springboard Consulting about the racist email, Plaintiff RAMSAY was summarily terminated by John Bennett on June 18, 2007. The termination meeting was attended by Plaintiff, Mr. Bennett and Michael Wichelns, a representative of Springboard Consulting.  The only reason Mr. Bennett gave to Plaintiff for his termination was that MPS did not need his services anymore, and that all three of his positions had been eliminated.   However, at the time of Plaintiff's termination, the company required someone to perform Plaintiff's job functions and, upon information and belief, Plaintiff's job functions have been assumed by other employees since his termination. The pretextual nature of Plaintiff's summary termination is further emphasized by the fact that his job performance had been exemplary prior to his termination, and Mr. Bennett had even discussed

the possibility of Plaintiff receiving an equity share in the company.

24.    As a direct and proximate result of Defendants' acts and conduct, Plaintiff RAMSAY was subjected to illegal and invidious racial discrimination.

25.    Defendants' acts or omissions set forth in this Complaint constitute conduct on the part of the Defendants demonstrating a malicious and/or reckless indifference to the federally protected rights of the Plaintiff RAMSAY.

26.    Plaintiff RAMSAY has retained the Sharp Law Firm to represent him in this action, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIMS

### COUNT I
### VIOLATION OF 42 U.S.C. § 1981
### RACE DISCRIMINATION AGAINST DEFENDANT MPS

27.    Plaintiff RAMSAY realleges and reavers Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28.    Defendant MPS' actions in subjecting Plaintiff to racist literature in the workplace and thereafter terminating Plaintiff from his employment were motivated by and based upon RAMSAY'S African ancestry, ethnic characteristics, and membership in the Negroid race.

29.    Defendant's discrimination against Plaintiff RAMSAY, as set forth herein, which was based upon Plaintiff's African American ancestry, ethnic characteristics and race, denied Plaintiff the right to make and/or enforce contracts, including but not limited to, the right to make, perform, modify, and terminate contracts, and further denied Plaintiff the right to enjoy all of the benefits, privileges, terms, and conditions of a contractual relationship, as are enjoyed by white citizens, in violation of 42 U.S.C. § 1981, as amended,  by the Civil Rights Act of 1991.

30.    Defendant's actions as set forth above were willful and malicious and in reckless

7

disregard of Plaintiff's protected rights under federal and state law.

31.     As a direct and proximate result of Defendant's unlawful and willful actions as set forth above, Plaintiff has suffered damages and will continue to suffer damages in the future, including, but not limited to:

        a.     Loss of income;

        b.     Stress, anxiety, emotional distress, humiliation, loss of enjoyment of life; and

        c.     Other pecuniary and non-pecuniaary losses.

32.     Plaintiff RAMSAY is entitled to an award of reasonable attorney's fees, costs and expenses related to this litigation pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor against Defendant MARITIME PROTECTIVE SERVICES:

        a.     Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of 42 U.S.C. § 1981;

        b.     Awarding Plaintiff actual and consequential damages, plus interest including back pay, front pay and compensation for other past and future pecuniary l losses;

        c.     Directing Defendant to pay Plaintiff compensatory damages for pain, suffering, humiliation, loss of enjoyment of life and compensation for other past and future non-pecuniary losses;

        d.     Awarding Plaintiff punitive damages in an amount commensurate with Defendant's misconduct and to deter such conduct in the future;

        e.     Permanently enjoining Defendant, its agents, and employees, from pursuing and continuing to pursue illegal and unlawful discriminatory

employment practices;

f. Awarding Plaintiff reasonable attorney's fees, expert fees, costs and

expenses related to the litigation pursuant to 42 U.S.C. § 1988; and

g. Ordering any other and further relief as this Court may deem just and proper.

**COUNT II**
**VIOLATION OF 42 U.S.C. § 1981**
**RETALIATION AGAINST DEFENDANT MPS**

33. Plaintiff RAMSAY realleges and reavers Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

34. Defendant MPS' actions in terminating Plaintiff from his employment were motivated by and based upon RAMSAY'S having engaged in protected activity under 42 U.S.C. § 1981, by complaining of race discrimination in the workplace.

35. Defendant's retaliation against Plaintiff RAMSAY, as set forth herein, which was based upon Plaintiff's having engaged in protected activity under 42 U.S.C. § 1981, denied Plaintiff the right to make and/or enforce contracts, including but not limited to, the right to make, perform, modify, and terminate contracts, and further denied Plaintiff the right to enjoy all of the benefits, privileges, terms, and conditions of a contractual relationship, as are enjoyed by white citizens, in violation of 42 U.S.C. § 1981, as amended, by the Civil Rights Act of 1991.

36. Defendant's actions as set forth above were willful and malicious and in reckless disregard of Plaintiff's protected rights under federal and state law.

37. As a direct and proximate result of Defendant's unlawful and willful actions as set forth above, Plaintiff has suffered damages and will continue to suffer damages in the future, including, but not limited to:

a. Loss of income;

9

b.      Stress, anxiety, emotional distress, humiliation, loss of enjoyment of life; and

c.      Other pecuniary and non-pecuniaary losses.

38.     Plaintiff RAMSAY is entitled to an award of reasonable attorney's fees, costs and expenses related to this litigation pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor against Defendant MARITIME PROTECTIVE SERVICES, INC.:

a.      Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of 42 U.S.C. § 1981;

b.      Awarding Plaintiff actual and consequential damages, plus interest including back pay, front pay and compensation for other past and future pecuniary l losses;

c.      Directing Defendant to pay Plaintiff compensatory damages for pain, suffering, humiliation, loss of enjoyment of life and compensation for other past and future non-pecuniary losses;

d.      Awarding Plaintiff punitive damages in an amount commensurate with Defendant's misconduct and to deter such conduct in the future;

e.      Permanently enjoining Defendant, its agents, and employees, from pursuing and continuing to pursue illegal and unlawful discriminatory employment     practices;

f.      Awarding Plaintiff reasonable attorney's fees, expert fees, costs and expenses related to the litigation pursuant to 42 U.S.C. § 1988; and

g.      Ordering any other and further relief as this Court may deem just and proper.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1981
## RACE DISCRIMINATION AGAINST DEFENDANT JOHN BENNETT

39.     Plaintiff RAMSAY realleges and reavers Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

40.     Defendant BENNETT'S actions in terminating Plaintiff from his employment were motivated by and based upon RAMSAY'S African ancestry, ethnic characteristics, and membership in the Negroid race.

41.     Defendant's discrimination against Plaintiff RAMSAY, as set forth herein, which was based upon Plaintiff's African American ancestry, ethnic characteristics and race, denied Plaintiff the right to make and/or enforce contracts, including but not limited to, the right to make, perform, modify, and terminate contracts, and further denied Plaintiff the right to enjoy all of the benefits, privileges, terms, and conditions of a contractual relationship, as are enjoyed by white citizens, in violation of 42 U.S.C. § 1981, as amended, by the Civil Rights Act of 1991.

42.     Defendant's actions as set forth above were willful and malicious and in reckless disregard of Plaintiff's protected rights under federal and state law.

43.     As a direct and proximate result of Defendant's unlawful and willful actions as set forth above, Plaintiff has suffered damages and will continue to suffer damages in the future, including, but not limited to:

      a.     Loss of income;

      b.     Stress, anxiety, emotional distress, humiliation, loss of enjoyment of life; and

      c.     Other pecuniary and non-pecuniaary losses.

44.     Plaintiff RAMSAY is entitled to an award of reasonable attorney's fees, costs and expenses related to this litigation pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor against Defendant JOHN BENNETT:

a.   Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of 42 U.S.C. § 1981;

b.   Awarding Plaintiff actual and consequential damages, plus interest including back pay, front pay and compensation for other past and future pecuniary l losses;

c.   Directing Defendant to pay Plaintiff compensatory damages for pain, suffering, humiliation, loss of enjoyment of life and compensation for other past and future non-pecuniary losses;

d.   Awarding Plaintiff punitive damages in an amount commensurate with Defendant's misconduct and to deter such conduct in the future;

e.   Permanently enjoining Defendant, its agents, and employees, from pursuing and continuing to pursue illegal and unlawful discriminatory employment practices;

f.   Awarding Plaintiff reasonable attorney's fees, expert fees, costs and expenses related to the litigation pursuant to 42 U.S.C. § 1988; and

g.   Ordering any other and further relief as this Court may deem just and proper.

### COUNT III
### VIOLATION OF 42 U.S.C. § 1981
### RETALIATION AGAINST DEFENDANT JOHN BENNETT

45.   Plaintiff RAMSAY realleges and reavers Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

46.   Defendant BENNETT'S actions in terminating Plaintiff from his employment were

motivated by and based upon RAMSAY'S having engaged in protected activity under 42 U.S.C. § 1981, by complaining of race discrimination in the workplace.

47.    Defendant's retaliation against Plaintiff RAMSAY, as set forth herein, which was based upon Plaintiff's having engaged in protected activity under 42 U.S.C. § 1981, denied Plaintiff the right to make and/or enforce contracts, including but not limited to, the right to make, perform, modify, and terminate contracts, and further denied Plaintiff the right to enjoy all of the benefits, privileges, terms, and conditions of a contractual relationship, as are enjoyed by white citizens, in violation of 42 U.S.C. § 1981, as amended, by the Civil Rights Act of 1991.

48.    Defendant's actions as set forth above were willful and malicious and in reckless disregard of Plaintiff's protected rights under federal and state law.

49.    As a direct and proximate result of Defendant's unlawful and willful actions as set forth above, Plaintiff has suffered damages and will continue to suffer damages in the future, including, but not limited to:

      a.    Loss of income;

      b.    Stress, anxiety, emotional distress, humiliation, loss of enjoyment of life; and

      c.    Other pecuniary and non-pecuniaary losses.

50.    Plaintiff RAMSAY is entitled to an award of reasonable attorney's fees, costs and expenses related to this litigation pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor against Defendant JOHN BENNETT:

      a.    Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of 42 U.S.C. § 1981;

      b.    Awarding Plaintiff actual and consequential damages, plus interest including

13

back pay, front pay and compensation for other past and future pecuniary l
losses;

c.     Directing Defendant to pay Plaintiff compensatory damages for pain, suffering, humiliation, loss of enjoyment of life and compensation for other past and future non-pecuniary losses;

d.     Awarding Plaintiff punitive damages in an amount commensurate with Defendant's misconduct and to deter such conduct in the future;

e.     Permanently enjoining Defendant, its agents, and employees, from pursuing and continuing to pursue illegal and unlawful discriminatory employment    practices;

f.     Awarding Plaintiff reasonable attorney's fees, expert fees, costs and expenses related to the litigation pursuant to 42 U.S.C. § 1988; and

g.     Ordering any other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on each and every issue set forth in this Complaint.

Respectfully submitted,

By:     _____
        Christopher C. Sharp, Esq.
        Florida Bar No.: 996858
        csharplaw@aol.com
        SHARP LAW FIRM, P.A.
        7350 N.W. 5TH Street
        Plantation, Florida 33317
        Phone: 954-617-6017
        Fax:  954-617-6018
        **Counsel for Plaintiff**

Dated:  August __1st__, 2007

# YAHOO! MAIL

Print - Close Window

| | |
|---|---|
| **Subject:** | FW: SOMEONE FINALLY SAID IT |
| **Date:** | Tue, 20 Feb 2007 11:14:16 -0500 |
| **From:** | "Neil Ramsay" <nramsay@mpsint.com> |
| **To:** | "Neil Ramsay" <neidiewit@yahoo.com> |

**From:** Bob Sewak
**Sent:** Tuesday, February 20, 2007 10:51 AM
**To:** MPS Staff - ALL
**Cc:** Andy Bush; Dr Bassem Younes; cbragdon@fit.edu; Dale Ferriere ; Hector Delgado; 'gcueto@marsys.com';
jkaplan@escreensolutions.com ; IRGGLOBAL@aol.com; Tortora, Jonathan; KenAHolden@aol.com; Pat; Pat
McGinty; Stack Steve (Steve Stack); Tom Pearson
**Subject:** FW: SOMEONE FINALLY SAID IT

Found this and thought it was worth "sending on..."

SOMEONE FINALLY SAID IT - Amen!

# Proud To Be White

## Someone finally said it.

### *How many are actually paying attention to this?*

**There are African Canadians, Mexican Canadians,
Asian Canadians, Arab Canadians, Native Canadians, etc.
And then there are just Canadians.**

**You pass me on the street and sneer in my direction.
You Call me "White boy," "Cracker," "Honkey,"
"Whitey," "Caveman" And that's OK.**

**But when I call you, Nigger, Kike, Towel head,
Sand-nigger,**

Camel Jockey, Beaner, Gook, or Chink ... You call
me a racist.

You say that whites commit a lot of violence
against you,
So why are the ghettos the most dangerous
places to live?

You have the United Negro College Fund. You
have Martin Luther King
Day. You have Black History Month. You have
Cesar Chavez Day. You
Have Yom Hashoah You have Ma'uled Al-Nabi
You have the NAACP.
You have BET.

If we had WET (White Entertainment Television)
We'd be racists.

If we had a White Pride Day .. You would call us
racists.

If we had White History Month  We'd be racists.

If we had any organization for only whites to
"advance" OUR lives
We'd be racists.

We have a Hispanic Chamber of Commerce, a
Black Chamber of
Commerce, and then we just have the plain
Chamber of Commerce.
Wonder who pays for that?

If we had a college fund that only gave white
students scholarships
... You know we'd be racists. There are over 60
openly proclaimed
Black Colleges in the US , yet if there were
"White colleges" ..
THAT would be a racist college.

In the Million Man March, you believed that you
were marching

**For your race and rights. If we marched for our race and rights,
You would call us racists.**

**You are proud to be black, brown, yellow and orange, and you're
Not afraid to announce it. But when we announce our white pride
You call us racists.**

**You rob us, carjack us, and shoot at us. But, when a white police officer
Shoots a black gang member or beats up a black drug-dealer running
From the law and posing a threat to society  You call him a racist.**

**I am proud.
But, you call me a racist.**

# Why is it that only whites can be racists?

**There is nothing improper about this e-mail.**

***Let's see which of you are proud enough to send it on.***

≈JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**I. (a) PLAINTIFFS**
Neil Ramsay

**DEFENDANTS**
Maritime Protective Services and John Bennett, individually,

**(b)** County of Residence of First Listed Plaintiff  Palm Beach   CIV-ZLOCH
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)  MAGISTRATE JUDGE
Christopher C. Sharp   SNOW
7350 N.W. 5th Street
Plantation, FL 33317  Tel: (954) 617-6017 Email: csharplaw@aol.com

Attorneys (If Known)

**07-61084**

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE
HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|

**II. BASIS OF JURISDICTION**  (Place an "X" in Box Only)

☐ 1  U.S. Government  Plaintiff
☑ 3  Federal Question  (U.S. Government Not a Party)

☐ 2  U.S. Government  Defendant
☐ 4  Diversity  (Indicate Citizenship of Parties in Item III)

O:07CV 61084-WJZ-CS

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & / Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability / Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine / **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability / ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment / Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ / **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations / ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment / ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

FILED by ___ D.C.
INTAKE

AUG - 2 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

**V. ORIGIN** (Place an "X" in One Box Only)

Appeal to District

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**  (See instructions second page):
a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO
JUDGE                      DOCKET NUMBER

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Claims for race disrimination and retaliation pursuant to 42 U.S.C. 1981

LENGTH OF TRIAL via  4-5  days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE   SIGNATURE OF ATTORNEY OF RECORD   DATE 8/1/07

Fla. Bar No. 996858

FOR OFFICE USE ONLY
AMOUNT 350.00   RECEIPT #   IFP

540611